BEFORE THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FILED
OCT 2 0 2022
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

LESLIE C. ARNOLD,
    Plaintiff,

v.

SYNGENTA CROP PROTECTION AG,
    Defendant.

Complaint
CASE NO.: 2:22-cv-00462

CIVIL COMPLAINT UNDER 42 U.S.C. § 1983

**Comes now** your Petitioner, Leslie Craig Arnold, *pro se*, pursuant to 42 U.S.C. § 1983 moving this Honorable Court to GRANT the instant complaint and award the appropriate damages and relief.

I.     JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff Arnold seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff Arnold's claims for injunctive relief are authorized by 28 U.S.C Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Southern District of West Virginia is an appropriate venue under 28 U.S.C. section 1391(b)(2) because it is where Plaintiff is currently residing as a ward of the state.

## II. PLAINTIFF

3. Plaintiff Leslie C. Arnold currently resides at 1 Mountainside Way, Mount Olive, West Virginia at the Mount Olive Correctional Complex & Jail. At the times mentioned herein Plaintiff resided in Pittsburgh, Pennsylvania and worked in West Virginia, Pennsylvania, and Ohio.

## III. DEFENDANT

4. Defendant SYNGENTA CROP PROTECTION AG has a global headquarters located at P.O. Box CH-4002 Basel, Switzerland. Defendants have various base operations throughout the globe, but are centrally located at their global headquarters at the times mentioned herein.

## IV. FACTS

Plaintiff, Leslie C. Arnold, *pro se*, for the complaint at issue states the following:

5. Plaintiff received extensive training and a handler/applicator license from the Environmental Protection Agency (EPA) in 1987. Plaintiff was tested again and renewed his license in 1988.

6. Plaintiff was employed by EcoLab-Chemlawn in Weirton, West Virginia from April 1987 to September 1988.

7. During his employment with EcoLab Chemlawn, Plaintiff worked as a commercial applicator servicing residential and commercial service calls. The herbicide/pesticide Paraquat was used frequently. There were warning labels on the containers of Paraquat regarding the poison content, but nothing as to lasting side effects due to exposure.

8. Plaintiff's duties included preparing, diluting, and mixing pesticides and herbicides. Plaintiff was then responsible for filling (6) six trucks' (800) eight hundred gallon

chemical tanks each day for the next day's utilization. Also part of Plaintiff's duties, he was tasked with filling individual 'hand canisters' that were stored on each individual truck.

9. The "pesticide" handler's license received through the Environmental Protection Agency (EPA) qualified Plaintiff to mix, handle, and disperse the various chemical agents and pesticides.

10. At one point in approximately late spring of 1988, during his employment by EcoLab Chemlawn, while filling one of the truck's pesticide tanks, a high pressure line ruptured. Some of the Paraquat chemical splashed into Plaintiff's right eye, even though he was wearing eye protection. The incident was documented by Management Personnel.

11. Management at EcoLab Chemlawn immediately sent Plaintiff to Weirton Medical Center for medical attention. Plaintiff was referred to a specialist where he was diagnosed with 'conjunctivitis' in and around his eyes and ordered to take time off from work in order to recover.

12. Plaintiff was reimbursed through Workman's Compensation for the (3) three weeks that he was recovering from the exposure.

13. Plaintiff's vision has greatly deteriorated since the incident and the current prescription for corrective lenses reflects the severity of that deterioration.

14. Plaintiff was a registered member of the International Brotherhood of Electrical Workers (IBEW) union in Pittsburgh, Pennsylvania in 1986, 1987, and 1988.

15. While Plaintiff was a member of the IBEW he served the Pittsburgh area maintaining clearance on and around residential power lines and high voltage power line right-of-ways for Duquesne Light in Pittsburgh, Pennsylvania and the surrounding area.

16. Plaintiff actively participated in the use and spread of Paraquat defoliate/herbicide/pesticide in order to kill and control the unwanted tree and brush growth under power lines.

17. Plaintiff received an Environmental Protection Agency (EPA) certification in order to properly handle chemical agents that were used as a defoliate/herbicide/pesticide, namely *Paraquat*. The test was administered in Bridgeville, Pennsylvania in 1987. Plaintiff was certified to administer these chemicals in Ohio, West Virginia, and Pennsylvania.

18. In November 1992 Plaintiff suffered his first seizure. Plaintiff could not move for 10 to 15 minutes. As a result of the seizure Plaintiff then began having complications maintaining balance.

19. Plaintiff scheduled an appointment with his Primary Care Physician in Weirton, West Virginia, Dr. Stephen Montero. The reason for the doctor visit was to discuss the seizure.

20. Dr. Montero referred Plaintiff to see a neurologist at Weirton Medical Center to undergo a battery of tests, including a CT scan.

21. Plaintiff was informed by medical staff that the CT scan 'showed some odd anomalies' but there was no conclusive diagnosis given at that time.

22. Plaintiff was prescribed medication to control the seizures, Gaberpenten 1200 mg three times a day. Initially the medication appeared to work.

23. In May of 2003 Plaintiff began to experience worsening headaches, issues with his balance, and trouble walking and moving.

24. Plaintiff was again scheduled for a series of tests, including another CT scan. Plaintiff was subsequently prescribed antibiotics and steroids to treat the symptoms.

25. Due to the increased issues with dizziness and maintaining balance Plaintiff visited Brookville Medical Center in Brookville, Pennsylvania. BMC referred Plaintiff to an audiologist in Dubois, Pennsylvania. The audiologist repositioned some disturbed parts of the inner ear and thereby correcting approximately (80%) eighty percent of the balance issues.

26. Conversely the locomotion and coordination issues persisted. Plaintiff attempted to endure as best he could.

27. In October 2011 Plaintiff awoke to find the left side of his face was completely paralyzed. Plaintiff was taken to Allegheny General Hospital in Pittsburgh, Pennsylvania.

28. Upon Plaintiff's admittance into the hospital a CT scan was ordered to determine whether or not Plaintiff had experienced a stroke.

29. Plaintiff was diagnosed with Bells Palsy. Plaintiff was treated with antibiotics and Prednizone.

30. A neurologist reviewed the CT scan results with Plaintiff. Plaintiff was diagnosed with early onset Parkinson's disease. As a result of the diagnosis Plaintiff was prescribed Sinemet, a dopamine replacement medication. Initially the dosage was (1) one tablet (2) two times a day.

31. Plaintiff is currently prescribed Sinemet. The dosage that Plaintiff is prescribed increases as the disease progresses, currently Plaintiff takes (1) one tablet, (4) four times daily.

32. It is the assertion of Plaintiff that the diagnosis of Parkinson's disease is in direct correlation with the Paraquat exposure in 1987 and 1988.

## V. LEGAL CLAIMS

33. Plaintiff realleges lines 1 through 32.

34. Paraquat is a toxic chemical that is widely used as an herbicide (plant killer), primarily weed and grass control.

35. In the United States, Paraquat is available primarily as a liquid in various strengths. The US Environmental Protection Agency classifies Paraquat as "restricted use." This means that it can be used only by people who are licensed applicators.

36. Because Paraquat is highly poisonous, the form that is marketed in the United States has a blue dye to keep it from being confused with beverages such as coffee, a sharp odor to serve as a warning, and an added agent to cause vomiting if someone drinks it. Paraquat from outside the United States may *not* have these safeguards added.

37. Paraquat was first produced for commercial purposes in 1961.

38. Worldwide, Paraquat is still one of the most commonly used herbicides/pesticides.

39. In the United States, due to its toxicity, Paraquat is available for use only by commercially licensed users.

40. Paraquat causes direct damage when it comes into contact with the lining of the mouth, stomach, or intestines.

41. After Paraquat enters the body, it is distributed to all areas of the body. Paraquat causes toxic chemical reactions to occur throughout many parts of the body, primarily the lungs, liver, and kidneys as well as the brain and functions thereof.

42. Plaintiff is now suffering from Parkinson's disease, a debilitating disease that only worsens with time. It is the assertion of Plaintiff that the Parkinson's disease is in direct correlation with the use of Paraquat in 1987 and 1988.

43. Plaintiff routinely experiences weakness of muscles, dizziness, fast heart rate, confusion and headaches. As previously stated, Plaintiff is prescribed medication to control the seizures. All mentioned symptoms are considered to be related to Paraquat exposure by the Centers for Disease Control, (CDC).

## VI. PRAYER FOR RELIEF

44. Plaintiff realleges lines 1 through 43.

45. Granting Plaintiff Arnold a declaration that the acts and omissions described herein violate his rights under the color of law and the United States Constitution, and,

46. Granting Plaintiff Arnold compensatory damages in the amount to be determined by a jury of his peers against the defendant, and,

47. Plaintiff seeks a jury trial on all issues triable by jury, and,

48. Plaintiff also seeks recovery of any and all expenses arising in this suit, and,

49. Any other forms of relief determined to be proper, just, and equitable by this Honorable Court. And it is so prayed.

Dated: October 14, 2022

Respectfully Submitted,


*Plaintiff, pro se*
Leslie C. Arnold
1 Mountainside Way
Mt. Olive, WV 25185

## VERIFICATION

I, Leslie Craig Arnold, have reviewed the foregoing complaint and attest that the details included herein are true and accurate to the best of my knowledge and recollection. I verify this complaint under penalty of perjury on this 12th day of October, 2022. I did serve this complaint to the Court Clerk and the Defendants via First Class Prepaid Mail on this 18 day of October, 2022.

1. Southern District of West Virginia
   Clerk, **Rory L. Perry II**
   United States District Court
   Robert C. Byrd U.S. Courthouse
   300 Virginia Street East, Room 2400
   Charleston, WV 25301

2. **Syngenta Crop Protection AG**
   Global Headquarters
   P.O. Box CH-4002
   Basel, Switzerland

Leslie C. Arnold, *Pro Se* Plaintiff